STATE OF WEST VIRGINIA

*v.*

RONNIE WILLIAMS

(No. 14115)

Decided December 5, 1978.

*Martorella & Martorella, Marjorie Martorella and Joseph G. Martorella* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Robert Digges, Jr.,* for defendant in error.

NEELY, JUSTICE:

This appeal arises from a conviction of armed robbery under *W.Va. Code,* 61-2-12 [1961]. The appellant, Ronnie Williams, assigns as error: the admission into evidence of a suggestive out-of-court identification; the refusal to admit hearsay testimony of another person's confession to the crime; the denial of appellant's motion for a new trial based on newly discovered evidence; and, the procedure used for jury selection which resulted in an all white jury. We agree with appellant that the out-of-court identification was not sufficiently reliable to be admissible and that another person's confession to the crime charged might have been admissible notwithstanding the hearsay objection; therefore, we reverse and remand for a new trial.

On March 13, 1977, at approximately 12:30 a.m., the Tri-State Carry Out in Huntington, West Virginia was robbed by two men, one of whom was armed. The State sought to prove that the appellant and Ernest Kelly were the two men who entered and robbed the store and that a third man, Marshall Hayden, was the driver of the escape vehicle. Appellant contends that Mr. Kelly and Mr. Hayden robbed the store and afterwards picked appellant up to "go get high;" consequently, appellant alleges that he knew nothing of the robbery until his arrest. After the robbery, the store owner, Mr. Cisco, notified the police that two black men, one of whom had gray hair and was wearing a blue jacket and a hat, had robbed his store. This information was reported by the police radio and three plain clothes officers who were in the vicinity of the Ohio River bridge at Seventeenth Street decided to watch the bridge for men fitting that description. These police officers observed a Cadillac carrying what appeared to be two black men, one of whom was wearing a blue jacket and a hat, and decided to follow. The pursuit was calm until a bundle was thrown from the Cadillac and the Cadillac began to travel at an excessive speed. The officers began active pursuit and called the South Point, Ohio police department for as-

sistance. Upon stopping the Cadillac the officers found that not two but three men were inside, Marshall Hayden, the driver, Ernest Kelly in the front passenger seat, and appellant in the back seat. Money and receipts, which were later determined to be from the Tri-State Carry Out, were found in plain view. The three men were arrested and placed in the back seat of a police car. The Huntington Police Department had been notified of the chase and Mr. Cisco was brought to the site of the arrest where he identified appellant and Ernest Kelly as the two men who had robbed his store. At trial, Mr. Cisco testified to this out-of-court identification and made an in-court identification of appellant.[1] Appellant contends that the out-of-court identification was so suggestive as to be inadmissible.

## I

In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of it or an in-court identification based on it, it must first be determined whether the identification was reliable even though the confrontation procedures were suggestive. *State v. Kennedy,* ___ W.Va. ___, ___ S.E.2d ___ (1978); *State y. Casdorph,* ___ W.Va. ___, 230 S.E.2d 476 (1976). Reliability can be evaluated by considering the factors set forth in *Neil v. Biggers,* 409 U.S. 188 (1972) which are: the opportunity of the witness to view the criminal at the time of the crime; the witness' degree of attention; the accuracy of the witness' prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and, the length of time between the crime and the confrontation. Aspects of reliability derived from this evaluation are then balanced against any suggestive procedures which negate reliability to determine whether under the totality of the circumstances the identification was reliable. *Manson v. Brathwaite,* 432 U.S. 98 (1977); *State v. Kennedy, supra.*

---

[1] The trials of appellant, Ronnie Williams, and Ernest Kelly were severed upon defense motion. The third accused, Marshall Hayden, has fled the jurisdiction.

We now apply this analysis to the facts of the present case:

1) *The opportunity of the witness to view the criminal at the time of the crime.* The unmasked robbers were in the well-lighted store for five minutes. Mr. Cisco testified that he had a good view of the criminal directly in front of him during the robbery whom he later identified as being Ernest Kelly, but that he had only a glancing, peripheral view of the criminal holding the gun on Mrs. Cisco whom he later identified as the appellant.

2) *The witness' degree of attention.* Although Mr. Cisco understandably was nervous, he undoubtedly devoted his full attention to the crime being committed.

3) *The accuracy of the witness' prior description of the criminal.* Mr. Cisco gave a detailed description of the criminal who was standing in front of him during the robbery but his description of the criminal he later identified as appellant was limited to an indication that the assailant was black.

4) *The level of certainty demonstrated by the witness at the confrontation.* Mr. Cisco positively identified appellant at the arrest site.

5) *The length of time between the crime and the confrontation.* Less than one hour passed between the time of the robbery and the time Mr. Cisco identified appellant as one of the criminals.

Mr. Cisco's identification does have some aspects of reliability, but when these are weighed against the suggestive procedure of taking the victim, Mr. Cisco, to the scene of the arrest and telling him that his money and receipts had been found in the possession of the three men seated in the police car, the suggestiveness then obviously outweighs questionable reliability and exclusion is the only proper remedy. *See State v. Kennedy, supra.*

## II

The appellant contends that the trial court erred by refusing to admit Steve Casey's testimony that his jail-mate, Marshall Hayden, had told him that he, Hayden, and Ernest Kelly had entered and robbed the Tri-State Carry Out without making any mention of appellant. Such testimony would be inconsistent with the State's theory that appellant and Ernest Kelly had entered the store, and consistent with appellant's contention that Marshall Hayden and Ernest Kelly had robbed the store and picked him up later. The trial court's basis for refusing to admit the testimony was that it was inadmissible hearsay. Appellant urges us to adopt yet another exception to the hearsay rule—namely an admission against penal interest which was specifically rejected in *State v. Poe*, 69 W.Va. 260, 71 S.E. 177 (1911) which held that a declaration against penal interest is not enough to overcome the hearsay barrier. Our law indicates that in West Virginia only a declaration against property or pecuniary interest is sufficient to serve as an exception to the hearsay rule. We are unable to accept our former blanket rejection of declarations against penal interest and prefer to address the underlying rationale of the hearsay rule to arrive at a new, workable solution.

Simply stated, hearsay evidence is excluded because it is not considered sufficiently trustworthy:

> The hearsay rule, which has long been recognized and respected by virtually every State, is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact. Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury. *Chambers v. Mississippi*, 410 U.S. 284 at 298 (1973).

The reasoning behind exclusion of hearsay evidence is the key to the exceptions from exclusion. The security gained by an opportunity to cross-examine a declarant may in a given instance be superfluous; it may be sufficiently clear from the circumstances that the statement offered is free enough from the risk of inaccuracy and untrustworthiness that cross-examination, while preferable, is not indispensable.[2] Moreover, the original declar-

---

[2] When a *defendant* in a criminal prosecution invokes the hearsay exclusionary rule, he is fortified by the "confrontation clause" of the Sixth Amendment to the United States Constitution which provides:

In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ... and its parallel provision in *W. Va. Const.*, art. 3 § 14.

While the United States Supreme Court has spoken on this subject, *Pointer v. Texas*, 380 U.S. 400 (1970); *California v. Green*, 399 U.S. 149 (1970); *Dutton v. Evans*, 400 U.S. 74 (1970), no definitive rule has emerged. *Dutton* involved a situation similar to the one before us. In that case Mr. Evans and a Mr. Williams were tried separately and convicted of murdering a police officer while stealing a car. At both trials the testimony of Mr. Williams' fellow prisoner that Mr. Williams had told him that "If it hadn't been for that dirty son-of-a-bitch Alex Evans, we wouldn't be in this now." was admitted over objection. In a habeas corpus proceeding, Mr. Evans claimed he had been denied his constitutional right of confrontation by the admission of the hearsay testimony. The Court of Appeals for the Fifth Circuit granted him relief, *Evans v. Dutton*, 400 F.2d 826 (5th Cir. 1968), but the United States Supreme Court reversed reasoning that sufficient indicia of reliability were present to meet the confrontation clause's practical concern for the accuracy of the truth-determining process because the trier of fact had a satisfactory basis for evaluating the truth of the statement. *Dutton v. Evans, supra.* The court considered such factors as corroborating evidence, the circumstances of the making of the statement, the spontaneousness of the statement, the fact that the statement was against the declarant's penal interest and the opportunity to cross-examine the in-court witness.

The United States Supreme Court declined making any general equation between the hearsay rule and the confrontation clause confining themselves to deciding the case before them. We do not pretend to be possessed of any superior insight enabling us definitively to dove-tail conflicts between confrontation rights and admissible hearsay; rather we will follow our superior court's lead that in each case there must be sufficient reliability to satisfy the

ant may be unavailable due to death, illness, absence from the jurisdiction or other circumstances outside the control of the proffering party so that if his testimony is to be used at all, it must be used in its untested form or its benefit will be lost entirely. It is when the circumstantial probability of trustworthiness is found that we find an exception to the general rule which excludes hearsay. The problem is that while each recognized exception to the hearsay rule was originally adopted by an analysis of probable reliability, these exceptions have unfortunately been treated as ironclad rules of admissibility without an examination of underlying reliability. This is why we find statements such as "Exceptions to the hearsay rule have virtually swallowed the rule." *De La Salle Institute v. United States*, 195 F. Supp. 891 at 894 (N.D. Cal. 1961). We do not advocate an *ad hoc* abandonment of the hearsay rule/exception dichotomy consistently followed by this Court; rather, we are retaining the general principle of the inadmissibility of hearsay with its many recognized specific exceptions by adding a general exception based on reliability in line with the Federal Rules of Evidence, Rule 804(b)(5):[3]

> (b) Hearsay exceptions.—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (5) Other exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees

---

Confrontation Clause's purpose. The better practice is probably not to admit any hearsay from the State where it is not absolutely necessary. Many reversals come from over-trying a case.

Of course, in a case, such as the one before us, where the *defendant* is proffering hearsay evidence beneficial to him this conflict does not arise and the inquiry is unnecessary.

[3] We are not alone in adopting this approach to the admissibility of hearsay. *See Stone v. State* 85 Wash.2d 342, 534 P.2d 1022 (1975); *Piper v. Fickett*, 113 N.H. 631, 312 A.2d 698 (1973); *Hew v. Aruda*, 51 Haw. 451, 462 P.2d 476 (1969); *Ark. Uniform Rules of Evid.*, 803(b)(5); *Neb. Rev. Stat.*, 27-804(2)(e) [1975]; *Nev. Rev. Stat.*, 51.315 [1971]; *N.M. Rules of Evid.*, 20-4-804(b)(6).

of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interest of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

We do not require the appellant in the present case to meet the notice requirement since that would be unfair; however, notice and the unavailability of the out-of-court declarant due to death, insanity, absence from the jurisdiction, pleading of the Fifth Amendment, or other reasons outside the control of the proffering party will in all future cases be necessary to invoke this exception.

While we agree with appellant that a statement which would subject its declarant to criminal penalties is not inherently more unreliable than a statement which would subject its declarant to property or pecuniary injury, we can nonetheless envisage that the application of an iron-clad exception admitting statements against penal interest will mechanically be applied when sufficient indicators of reliability are not present. A large number of statements against penal interest come from the confines of the jailhouse and may be nothing more than jailhouse bravado. However, when the trial court is faced with the choice of allowing the testimony or losing its benefits entirely, it must examine the circumstances and determine if it is so unreliable as to mandate exclusion. The court should consider any possible self interest for the declarant to make the statement, the trustworthiness of the witness testifying as to the statement, the presence of any evidence tending to corroborate the

truth of the statement, and any other factors bearing on the reliability of the evidence proffered.

We are not overruling our previous adoption of exceptions to hearsay exclusion in West Virginia, but if any statement is clearly unreliable hearsay it is not admissible even though it falls within a specific exception since all exceptions to hearsay are based on the assumption that something about their form or the circumstances surrounding their utterance clothe them with sufficient indicia of reliability to counter our presumption that all hearsay is inherently unreliable. The recognized exceptions are only presumed to be reliable.

We are not presented with sufficient facts in the present case to determine whether the evidence proffered is sufficiently reliable to be admissible; therefore, we leave this determination to the trial court with a reminder that rules of evidence should be applied in favor of the defendant in consonance with the philosophy of Anglo-American law that it is better to release the guilty than to punish the innocent. Whenever the nature of the process is such that there is a risk that a particular application or lack of application of a procedural rule will, in and of itself, cause a distortion of the judicial process raising the spector that the truth-finding function will be frustrated, then the risk of such distortion should always be placed upon the party most able to bear the loss; in any confrontation between the power of the State and an individual, that party is always the State.

## III

Appellant contends that blacks and poor persons were systematically excluded from the grand and petit juries which indicted and convicted him. The only evidence proffered in support of this contention was testimony about the method used to select juries, a random drawing of names taken from the voter registration rolls. We are unable to accept appellant's argument. There is no restriction of franchise based on race, property ownership or wealth. Since exercise of the franchise and service on a jury are both duties and privileges evidencing

one's desire responsibility to participate in a democratic society, we do not believe it to be erroneous to use voter registration rolls for jury selection absent evidence that there is an intent to exclude black persons or poor persons, or that the effect of the use of voter registration rolls was *in fact* to exclude black and poor persons unreasonably and systematically from jury selection.[4] There is no evidence of this sort in the record before us. We do not disapprove of any circuit court using public assistance rolls in addition to voter registration rolls to obtain a list of prospective jurors, but such a practice is not mandatory. Appellant has failed to prove any systematic exclusion and offered no proof from which a systematic exclusion could be inferred.[5]

For the reasons stated above the judgment of the Circuit Court of Cabell County is reversed and this case is remanded for a new trial consistent with this opinion.

*Reversed and remanded.*

---

[4] In order for a defendant to warrant a full hearing on any alleged invidious discrimination on jury selection he must demonstrate that he is a member of a recognizable, distinct group that has been under-represented by comparing the proportion of the group in the total population to the proportion called as jurors over a significant period of time. Once he has statistically shown substantial under-representation of his group, he has made a prima facie case of discrimination, and the burden shifts to the State to rebut that case. *State ex rel. Whitman v. Fox*, ___ W. Va. ___, 236 S.E.2d 565 (1977).

[5] We are not required to address appellant's claim that he should have been awarded a new trial on the basis of newly discovered evidence since a new trial is already being awarded and all evidence will be evaluated at that trial.