309 S.E.2d 109

**Dennis M. NAUM**

v.

**Honorable Robert C. HALBRITTER, Spec. Judge, etc.**

**No. 15942.**

Supreme Court of Appeals of West Virginia.

Nov. 14, 1983.

James A. Byrum and James A. Byrum, Jr., Bailey, Byrum & Vieweg, Wheeling, for petitioner.

Mark A. Karl, Moundsville, for respondent.

NEELY, Justice.

On 24 May 1982, petitioner Dennis Naum, prosecuting attorney of Ohio County, was called to testify before a grand jury. Mr. Naum testified that his only knowledge of Anita Kay McLaughlin was that she was a waitress at a bar he occasionally visited. On 6 April 1983, the petitioner was indicted by that grand jury for false swearing.

Ms. McLaughlin is now dead, an apparent victim of homicide. In rebutting petitioner's claim that he had only passing knowledge of Ms. McLaughlin the special prosecutor relied upon statements allegedly made by Ms. McLaughlin to friends and family. The prosecution claimed those statements indicated that the petitioner had had intimate relations with the deceased, a prostitute, on at least one and perhaps more than one occasion.

At the time this evidence was offered, petitioner made a motion in limine to foreclose use of such out-of-court statements as inadmissible hearsay. Respondent ruled that those out-of-court statements were admissible as declarations made against penal interests. Petitioner then came here seeking a writ of prohibition. We grant that writ.

### I

The threshold inquiry in this case is whether a writ of prohibition is an available remedy for petitioner. This Court articulated the necessary circumstances for granting such a writ in *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979). That case involved a writ of prohibition brought to challenge a trial court's transfer of a civil personal injury case. Although we held that the transfer was not an abuse of discretion, we took that occasion to outline the circumstances in which a writ of prohibition was appropriate. First, other remedies such as appeal must be inadequate. Second, the writ should not unduly interfere with efficient judicial administration. Third, the writ must be sought in good faith. Finally, it should be addressed to a clear legal issue.

The case *sub judice* meets all of these criteria. Petitioner is not adequately protected by the remedy of appeal because under *W. Va. Code* 61-5-3 [1927], a person convicted of false swearing is barred from public office and *W. Va. Code* 6-6-9 [1931] fixes the time for such forfeiture as when judgment is entered upon conviction. Thus, by operation of law he would be substantially harmed during the period when his appeal was maturing for consideration. As to judicial economy, although we are generally reluctant to reverse an interlocutory evidentiary ruling by a trial judge,

this situation requires such action. Because the state offers no corroborating evidence for its charge, an ultimate ruling by this court that the evidence is inadmissible will necessarily lead to reversal of any conviction. Therefore, allowing the trial to go through to its conclusion would be an exercise in futility, wasting both the trial court's time and the state's resources.

Petitioner seeks the writ in good faith. He certainly has a colorable legal argument. Furthermore, it is difficult to imagine what benefit there is in obstruction for a public official whose reputation is incrementally tainted by every day's delay in the resolution of his case. Finally, this issue appears ripe for appellate consideration since it involves a clear legal question. There is no further need for development of a factual record. The sole issue is whether the evidence which the State proffers in support of its case has sufficient indicia of reliability to overcome the general legal principle that hearsay is not admissible. A definitive ruling on that question from this court may provide guidance not only for this case but for trial courts throughout the state. For all of these reasons, treating petitioner's request at this time rather than after the trial is completed is both necessary and desirable.

### II

Respondent relied upon the exception to the hearsay rule which allows out-of-court statements made against penal interests to be admitted in court. This exception has limited application in West Virginia. In fact until *State v. Williams*, 162 W.Va. 348, 249 S.E.2d 752 (1978), this State did not recognize that common law exception. See, e.g., *State v. Poe*, 69 W.Va. 260, 71 S.E. 177 (1911).

It is worth noting at the outset that federal courts are in accord with our view that the exception to the hearsay rule for statements made against penal interest should be applied only when other factors make those statements appear credible. As the Ninth Circuit noted in *United States v. Harris*, 501 F.2d 1, 7 (9th Cir. 1974), "[A] statement is not admissible as an exception to the hearsay rule solely because it is against the penal interest of the declarant." In *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the Supreme Court condoned the admission of hearsay statements made against penal interest only because "[T]he hearsay statements involved in this case were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." Thus, out-of-court statements against penal interest are admitted into evidence in federal courts only when it is reasonable to believe that the out-of-court declarant was making a credible statement.

In *Williams, supra*, we carved out a limited exception to the hearsay rule for statements against penal interest in a criminal case where the statement against penal interest was offered by the defendant to corroborate his own exculpatory story. This court made clear in that case that the exception for statements adverse to penal interests was merely an application of the general principle that hearsay evidence is admissible only when it is accompanied by sufficient indicia of reliability. In that case we established the following substantial qualification on the admission of an out-of-court statement against penal interest:

> The court should consider any possible self-interest for the declarant to make the statement, the trustworthiness of the witness testifying as to the statement, the presence of any evidence tending to corroborate the truth of the statement, and any other factors bearing on the reliability of the evidence proferred.

*Id.* 162 W.Va. at 356–357, 249 S.E.2d at 757. Certainly our holding in *Williams* that under certain limited circumstances admissions against penal interests may be introduced did not create a *per se* exception to the general hearsay rule. Because we do not find sufficient indicia of reliability present in this case and because we are reluctant to extend the exception to cases in which the prosecution relies exclusively on hearsay to establish guilt, we hold that the out-of-court statements made by the deceased are inadmissible.

## III

■ Ms. McLaughlin's "statements against penal interests" had to do with acts of prostitution. The remarks were made to intimate friends and members of her family. Those individuals were presumably already well aware of the deceased's chosen occupation. Regardless of whether they approved of her activities, her revelations as to one particular act were hardly likely to alter their view of her character. It is even less likely that those admissions to confidants would lead to criminal prosecutions. Therefore, the underlying rationale for an exception in cases where statements are made against the penal interests of an extra-judicial declarant simply is not present in this case. As the Second Circuit has stated, "Even a broadened penal interest exception must have some boundaries and must be limited at least to statements admitting a particular crime for which prosecution is possible at the time." *United States v. Dovico*, 380 F.2d 325, 327 (1967).

In the case *sub judice*, Ms. McLaughlin ran no real risk of prosecution both because of her close ties to her audience and because prostitutes are not actively prosecuted in this State unless they are caught in the act. Furthermore, even if Ms. McLaughlin's statements were in some minor sense against either her penal or social interest, the potential damage to her reputation in no way counterbalances the injury that the petitioner could suffer if those statements were ruled admissible. Because the admission of hearsay statements requires a balancing, it seems to us improper to allow statements that are only nominally against the penal interests of the declarant to be admitted when those statements can destroy the life and reputation of a criminal defendant. In *Williams*, it should be noted that the balance tilted the other way. The defendant in that case sought to use the declaration against penal interest as a shield and not a sword; we allowed the jury to consider his proffered hearsay evidence because of our recognition of the disastrous consequences that would follow for the defendant from an erroneous conviction—in effect, the mirror image of this case.

The case before us also differs from *Williams* in that respondent offers no corroboration for Ms. McLaughlin's statements. In *Williams*, the defendant offered the hearsay testimony to support his own protestations of innocence. Thus, the triers of fact had some opportunity to test the credibility of the statements under cross-examination.

Statements against penal interest are often found admissible because it is presumed that individuals would not make statements that placed their own liberty in danger unless those statements were accurate. Truth would seem to be the only possible reason for making such remarks. In this case, however, it is not difficult to find other motivations. A woman who is known to be a prostitute does not reduce her standing by claiming intimate relations with the local prosecutor. In fact, she may enhance her reputation. Furthermore, if her criminal associates were attempting to demean the prosecutor, it would be to their advantage to have her plant such a rumor. Those alternative motivations could be explored on cross-examination if it were possible for Ms. McLaughlin to appear in the courtroom. The question of her credibility would then go to the jury. Since she is not available for cross-examination, however, those alternative explanations of her out-of-court statements cast sufficient doubt on their reliability to make them inadmissible.

There are other reasons for questioning the veracity of Ms. McLaughlin's allegations. Although she told several individuals that she had had an intimate relationship with the petitioner, she seems to have had trouble recalling the details of that relationship. On some occasions, she reportedly told listeners that she had had "a trick" with the prosecutor. On other occasions, she boasted of sexual encounters on more than one occasion. She told some people the "trick" had been a few weeks earlier and others that it had occurred many months before. Once again, those discrepancies may or may not be reconcila-

ble. It would be grossly unfair, however, to charge the petitioner with proving their unreliability when the best witness for that purpose is no longer available.

■ Rules of evidence exist for a purpose. The reason hearsay is generally not admissible is easily articulated. Individuals should not be subject to losses of liberty or property based on the testimony of accusers whom they cannot confront. The rationale for an exception in cases where declarants make statements against penal interests is also clear. People generally don't lie when acceptance of the falsehood will put them in jail. The justifications for the exception in cases of statements against penal interests simply do not fit the facts of this case. Ms. McLaughlin's family and friends knew she was a prostitute and were not likely to report her to the authorities or even change their opinion of her for the worse. Furthermore, there were plausible motivations for her to lie. Nothing about her claim makes it more reliable than the standard barroom boast.

■ The rule against "hearsay" is not a technicality that allows the guilty to go free. It has its roots in the fundamental principle that legal determinations should be based, to the extent humanly possible, on reliable truths. If the only evidence proferred is insufficiently reliable, we cannot know that a defendant is guilty and under our system he must be presumed innocent.

## IV

In addition to the evidentiary considerations of the hearsay rule, allowing a prosecution to proceed solely on evidence which is not subject to cross-examination raises a serious constitutional issue. In *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), the Supreme Court held that the Sixth Amendment's right of an accused to confront witnesses against him is a fundamental right and obligatory on the states under the Fourteenth Amendment. The Court stated, "It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him." *Id.* at 404, 85 S.Ct. at 1068.

We are aware that subsequent cases have made clear that the rule against hearsay and the Sixth Amendment guarantee of a right to confrontation are not entirely coextensive. In *California v. Green,* 399 U.S. 149, 156, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970), the Supreme Court stated, "[M]erely because evidence is admitted in violation of a long established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied." Nevertheless we do believe that where *the* crucial witness for the prosecution will be unavailable for any form of cross-examination a serious constitutional issue exists. Indeed in *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Supreme Court allowed the use of an out of court admission only after noting that the evidence presented was tangential to the central issue in the case and that the evidence was heavily corroborated.

■ Neither of those additional safeguards mentioned in *Dutton, supra,* is present in the case before us. An out of court statement not subject to cross-examination is being offered to prove the central issue in the case. Without Ms. McLaughlin's alleged statement to friends and family, there is no evidence that the petitioner swore falsely when saying he had only a passing acquaintance with the declarant. The state has been unable to find any other evidence to support its accusation that the petitioner's statement was false. If the right to confront one's accusers means anything, it means that citizens should not be deprived of their liberty and have their reputation soiled solely on the basis of statements made outside of the legal system before uncritical listeners who relay those assertions to a jury which has no reliable basis for judging the credibility of the declarant and no other evidence to consider in determining guilt.

We recognize that some jurists are uncomfortable with reading the subtleties of the common law of evidence into the federal constitution. *See,* e.g. *California v.*

*Green, supra,* 399 U.S. at 172, 90 S.Ct. at 1942 (Harlan, J. concurring). Even without reference to the Sixth Amendment confrontation clause, however, a conviction based entirely on *ex parte* statements which are not subject to cross-examination raises serious due process questions. Whether one relies on an approach which incorporates Bill of Rights guarantees into the Fourteenth Amendment and makes them binding on the states or looks only to the general principles of due process explicitly embodied in the Fourteenth Amendment is a matter of considerable academic and practical interest for those who are concerned with issues of federalism. Under either form of analysis, however, the conclusion for the petitioner in this case is that a trial in which he could not seek to discredit the only evidence offered against him would be grossly unfair. Although we underscore the fact that the primary basis for our ruling today is a belief that the evidence is inadmissible hearsay as a matter of West Virginia's common law of evidence, we also express grave reservations about whether the defendant's constitutional rights were adequately protected.

Therefore, for all of the foregoing reasons, the writ of prohibition for which petitioner prays is awarded.

Writ awarded.