460 S.E.2d 36

194 W.Va. 221

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Kenneth Jay MASON, Defendant Below, Appellant.**

**No. 22581.**

Supreme Court of Appeals of West Virginia.

Submitted May 3, 1995.

Decided June 15, 1995.

Pamela Games–Neely, Pros. Atty. for Berkeley County, Martinsburg, for appellee.

James A. McKowen, Hunt, Lees, Farrell & Kessler, Charleston, for appellant.

CLECKLEY, Justice:

The defendant, Kenneth Jay Mason, appeals the final order of the Circuit Court of Berkeley County, entered March 14, 1994, which sentenced him to life imprisonment with a recommendation of mercy for his conviction by jury of first degree murder. On appeal, the defendant raises several assignments of error. The primary focus of most of the alleged errors concerns the admission of extrajudicial statements given to the police by two individuals who were unavailable to testify at trial. We address only the hearsay and Confrontation Clause issues because we find the other assignments of error to be without merit.

I.

## FACTS AND PROCEDURAL BACKGROUND

On the evening of February 8, 1993, several people were drinking beer at the defendant's house. Those at the defendant's house included the defendant, Tina Adams, Rodney Canfield, William Davis, Brian Cook, and the victim, Timothy Sanders. At some point in the evening, the defendant, Mr. Canfield, Mr. Davis, and the victim got in the victim's car and drove to a remote area. Once at the area, the four men exited the car, and the defendant allegedly pulled out a gun, aimed it at the victim's head, and shot. After the shot, the victim fell to the ground, and the defendant handed Mr. Canfield the gun and told him to shoot the victim. It is disputed whether Mr. Canfield fired the weapon. In his statement, Mr. Canfield asserted he pretended the gun jammed and gave it back to the defendant. At that point, the victim was shot by either the defendant or Mr. Canfield. In spite of this injury, the victim was able to get up and run into the woods. Mr. Davis also ran into the woods. Mr. Davis testified he ran into the woods because he was afraid and did not want to be involved. The defendant and Mr. Canfield drove off in the victim's car.

After returning to the defendant's house to retrieve a flashlight, the defendant and Mr. Canfield went to search for the victim. They found the victim lying along side a road, and either the defendant or Mr. Canfield fired two more shots into the defendant's head. The two men then placed the victim's body in the trunk of the car and returned to the defendant's house.[1]

In a statement given to the police, Robert Wasson, Jr., said that he arrived at the defendant's house before the defendant and Mr. Canfield returned for the first time to get a flashlight. Upon the defendant's and Mr. Canfield's second return to the house, Mr. Wasson was asked and agreed to follow the two men in a separate vehicle. The defendant and Mr. Canfield drove to Maryland

---

1. The motive for this murder is speculative at best. There is some indication the motive may have been robbery. Contrary, one theory suggested by the defendant is that Mr. Canfield committed the murder out of jealousy of the victim's relationship with Ms. Adams.

and disposed of the victim's body and then took the victim's car to another location in Maryland and burned it. After they disposed of the victim's body and the car, Mr. Wasson drove the defendant and Mr. Canfield back to the defendant's house.

The victim's body and the car were discovered on February 9, 1993, and reported to the police. During the investigation of the murder, the police took several extrajudicial statements. At issue before the trial court were statements given by Mr. Canfield, Mr. Wasson, and Mr. Davis. Prior to trial, the defendant learned the State intended to introduce some of their statements as evidence, however, all three men would not testify at trial because both Mr. Canfield and Mr. Davis were invoking their Fifth Amendment right against self-incrimination and Mr. Wasson was unavailable for medical reasons.

Before the trial began, the defendant filed a motion *in limine* to exclude any out-of-court statements given by witnesses who would not testify at the trial. At a pretrial conference, defense counsel called Sergeant Fred Wagoner of the West Virginia State Police to testify. Sergeant Wagoner stated that he questioned parts of Mr. Davis's statement but believed it was "true and accurate to the best of [his] knowledge." Similarly, he agreed with defense counsel that with regard to Mr. Canfield's statement "there are parts of the statement which [he had] some doubt as to the truth and accuracy[.]" Sergeant Wagoner also said he believed the statement given by Mr. Wasson was true.[2] The trial court determined the statements the State sought to admit were admissible under Rule 804(b)(3) of the West Virginia Rules of Evidence as declarations against penal interests.[3]

Immediately prior to trial, the trial court granted Mr. Davis, along with Ms. Adams, transactional immunity, and they both testified at the trial. Mr. Canfield and Mr. Wasson did not testify. Defense counsel renewed his objections to the admission of Mr. Canfield's and Mr. Wasson's tape-recorded statements at the time they were played to the jury.[4] These objections were overruled. Both statements implicate the defendant as the only person who shot the victim.

## II.

### ADMISSIBILITY OF STATEMENTS

The defendant argues the statements made by Mr. Canfield and Mr. Wasson are inadmissible for six reasons. First, the defendant contends the Confrontation Clause found in the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution "bars admission of evidence otherwise admissible under a hearsay exception if it bears no adequate indicia of reliability." Second, the defendant argues the statements do not fall under the Rule 804(b)(3) exception because the statements were not made against the declarants' penal interests with respect to the murder; instead, in their statements, the declarants implicate themselves as accessories after the fact, and they may not even have known they were incriminating them-

---

**2.** Several statements were actually given to the police by Mr. Canfield, Mr. Wasson, and Mr. Davis; however, the State did not seek to admit them all. The statement by Mr. Canfield that was admitted was given on February 18, 1993. The statement by Mr. Wasson that was admitted was given on February 17, 1993. These statements were the ones referred to by Sergeant Wagoner.

**3.** Rule 804(b)(3) is a hearsay exception and provides:

"(b) *Hearsay Exceptions.*—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \* \* \* \*

"(3) Statements against Interest.—A statement which was at the time of its making so far contrary to the declarant's pecuniary or

proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless he or she believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." 1994 amended version.

The amended version of Rule 804(b)(3) is substantially similar to the preceding version.

**4.** The defendant is represented by different counsel on appeal.

selves. Third, the statements do not meet the reliability test under Rule 804(b)(5) of the West Virginia Rules of Evidence.[5] Fourth, the statements bear no indicia of reliability and, therefore, are inadmissible under any of the hearsay exceptions contained in Rule 804 of the West Virginia Rules of Evidence. Fifth, the statements should not have been admitted as substantive evidence with no opportunity for cross-examination. Sixth, given the nature of the statements, the right to cross-examination was a crucial element of presenting an appropriate defense.

▬ Before the disputed statements could be admitted, the trial judge was required to analyze the defendant's objections under both the hearsay rules and under the Confrontation Clause. If the statements are inadmissible under either of these provisions, they must be excluded. The defendant specifically argues that although portions of the statements given by Mr. Canfield and Mr. Wasson are self-inculpatory, the statements are not admissible against him pursuant to

Rule 804(b)(3) under the analysis of *Williamson v. United States*, —— U.S. ——, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) (statement to drug enforcement agent incriminating another is not a statement against declarant's penal interest within the meaning of Rule 804(b)(3), even if it is included within a broader narrative that is generally self-inculpatory). He further argues the portions are not admissible under the Confrontation Clause. *See Idaho v. Wright*, 497 U.S. 805, 817, 110 S.Ct. 3139, 3147, 111 L.Ed.2d 638, 653 (1990) (hearsay evidence not falling within firmly rooted hearsay exception is " 'presumptively unreliable and inadmissible for Confrontation Clause purposes,' " *quoting Lee v. Illinois*, 476 U.S. 530, 543, 106 S.Ct. 2056, 2063, 90 L.Ed.2d 514, 528 (1986)).[6]

▬ The Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution guarantee an accused the right to confront and cross-examine witnesses.[7] *Davis v.*

---

**5.** Rule 804(b)(5) states:

"Other Exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant. (As amended by order entered June 15, 1994, effective July 1, 1994.)"

The amended version of Rule 804(b)(5) is substantially the same as the preceding version.

**6.** Only two reasons keep us from reversing when the Confrontation Clause is violated. First, testimony admitted over a defendant's valid Confrontation Clause objection is subject to a harmless error analysis. *See generally Delaware v. Van Arsdall*, 475 U.S. 673, 681–84, 106 S.Ct. 1431, 1436–38, 89 L.Ed.2d 674, 684–87 (1986) (Confrontation Clause violation subject to harmless error analysis, considering, *inter alia*, the

strength of the properly admitted evidence against the defendant and whether the improperly admitted testimony was cumulative); *State v. Mullens*, 179 W.Va. 567, 572 n. 7, 371 S.E.2d 64, 69 n. 7 (1988), ("confrontation clause violations are subject to a harmless error analysis." (Citations omitted)).

Second, if a defendant fails to object to the admission of evidence in violation of his Confrontation Clause rights, it is ground for reversal only if it constitutes plain error. *See* Fed. R.Crim.P. and W.Va.R.Crim.P. 52(b). "Plain error warrants reversal 'solely in those circumstances in which a miscarriage of justice would otherwise result.' " *State v. Miller*, 194 W.Va. 3, 18, 459 S.E.2d 114, 129 (1995), *quoting United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816, 827 n. 14 (1982).

**7.** In essence, the Confrontation Clause provides a criminal defendant with two distinct forms of protection: "[T]he right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40, 53 (1987). (Citation omitted). Both are critical and are deeply rooted in our legal culture. *Coy v. Iowa*, 487 U.S. 1012, 1015–16, 108 S.Ct. 2798, 2800–01, 101 L.Ed.2d 857, 863–64 (1988). In fact, the dual guarantee "is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas*, 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923, 927 (1965).

*Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974); *State v. James Edward S.,* 184 W.Va. 408, 400 S.E.2d 843 (1990); *Naum v. Halbritter,* 172 W.Va. 610, 309 S.E.2d 109 (1983); *State v. Foster,* 171 W.Va. 479, 300 S.E.2d 291 (1983). "[T]he mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials," and the touchstone is whether there has been " 'a satisfactory basis for evaluating the truth of the prior statement.' " *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213, 227 (1970), *quoting California v. Green,* 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489, 499 (1970). *See Kentucky v. Stincer,* 482 U.S. 730, 737, 107 S.Ct. 2658, 2663, 96 L.Ed.2d 631, 642 (1987) ("[t]he right to cross-examination ... is essentially a 'functional' right designed to promote reliability in the truth-finding functions of a criminal trial"). Clearly, an essential purpose of the Confrontation Clause is to ensure an opportunity for cross-examination. In exercising this right, an accused may cross-examine a witness to reveal possible biases, prejudices, or motives. *Davis,* 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 354 ("partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' [*Quoting* ] 3A J. Wigmore *Evidence* § 940, p. 775 (Chadbourn rev. 1970))." Thus, the introduction of extrajudicial statements at trial as direct and substantive evidence [8] is circumscribed by the Confrontation Clause which places independent restrictions upon the admission of such evidence.

▬ In *James Edward S., supra,* we outlined some of these basic principles in Syllabus Points 2, 3, and 5:

"2. The two central requirements for admission of extrajudicial testimony under the Confrontation Clause contained in the Sixth Amendment to the United States Constitution are: (1) demonstrating the unavailability of the witness to testify; and (2) proving the reliability of the witness's out-of-court statement.

"3. In order to satisfy its burden of showing that the witness is unavailable, the State must prove that it has made a good-faith effort to obtain the witness's attendance at trial. This showing necessarily requires substantial diligence.

\* \* \* \* \* \*

"5. Even though the unavailability requirement has been met, the Confrontation Clause contained in the Sixth Amendment to the United States Constitution mandates the exclusion of evidence that does not bear adequate indicia of reliability. Reliability can usually be inferred where the evidence falls within a firmly rooted hearsay exception."

Here, the defendant does not claim the State failed to satisfy its burden of showing the two witnesses were unavailable. Rather, his attack is focused on the second part of the test that requires the State to prove the reliability of the out-of-court statements.

▬ In addition to the Confrontation Clause, third-party statements may be excluded on hearsay grounds. An extrajudicial statement is inadmissible under hearsay analysis if it is being offered to prove the truth of the matter asserted and it fails to qualify under any of the hearsay exemptions or exceptions. *See* W.Va.R.Evid. 801. In Syllabus Point 1 of *State v. Maynard,* 183 W.Va. 1, 393 S.E.2d 221 (1990), we stated:

"Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules [exemptions under Rule 801(d) ]; or 3) the statement is hearsay but falls within an exception provided for in the rules [exceptions under Rules 803 and 804]."

▬ The Confrontation Clause and the hearsay rules, while not coextensive, "are generally designed to protect similar val-

---

**8.** *See State v. Dillon,* 191 W.Va. 648, 658, 447 S.E.2d 583, 593 (1994) (statements not offered for the truth of the matter asserted do not implicate the Sixth Amendment).

ues[.]" *Green*, 399 U.S. at 155, 90 S.Ct. at 1933, 26 L.Ed.2d at 495. As a result of their similarity and because they "stem from the same roots," [9] both this Court and the United States Supreme Court have held that for purposes of the Confrontation Clause "no independent inquiry into reliability is required when the evidence 'falls within a firmly rooted hearsay exception.'" *Bourjaily v. United States*, 483 U.S. 171, 183, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144, 157 (1987), *quoting Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608 (1980); *State v. Walker*, 188 W.Va. 661, 425 S.E.2d 616 (1992). Thus, we must determine whether the disputed extrajudicial statements admitted against the defendant are admissible under Rule 804(b)(3) and, if so, whether Rule 804(b)(3) is a firmly rooted hearsay exception or whether the statements are otherwise admissible under the Confrontation Clause.

The issue here involves third-party statements or confessions which implicate the defendant as well as the declarants. Rule 804(b)(3) modified common law by creating an important qualification to the admissibility of a statement of an unavailable declarant. *See Donnelly v. United States*, 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820 (1913), *modified on other grounds*, 228 U.S. 708, 33 S.Ct. 1024, 57 L.Ed. 1035 (1913) (common law did not recognize a declaration against "penal interest" and evidence of a third party's confession against the accused was inadmissible).[10] Under Rule 804(b)(3), a statement that tends to subject a declarant to "criminal liability" may be admissible as well as declarations against a pecuniary or proprietary interest. While some courts boldly declare that Rule 804(b)(3) is a "firmly rooted" exception and that no "independent inquiry into

reliability" is required for the Confrontation Clause,[11] most courts are more cautious. One such court is the United States Supreme Court. In *Williamson, supra*, the Supreme Court reviewed the issue solely as to admissibility under Rule 804(b)(3) and expressly refused to determine whether the statements were admissible under the Confrontation Clause or if the hearsay exception for statements against interest is firmly rooted. Specifically, the Supreme Court stated:

> "[W]e need not address [the defendant's] claim that the statements were also made inadmissible by the Confrontation Clause, ... and in particular we need not decide whether the hearsay exception for declarations against interest is 'firmly rooted' for Confrontation Clause purposes.... We note, however, that the very fact that a statement is genuinely self-inculpatory—which our reading of Rule 804(b)(3) requires—is itself one of the 'particularized guarantees of trustworthiness' that makes a statement admissible under the Confrontation Clause." —— U.S. at ——, 114 S.Ct. at 2437, 129 L.Ed.2d at 486. (Citations omitted).

■ *Williamson*, a highly instructive case in determining the contours of Rule 804(b)(3) and in clarifying its scope, was decided after the trial in the case *sub judice*.[12] The Supreme Court began by recognizing the penal interest exception requires that statements be inculpatory; where statements are self-exculpatory, they are not admissible:

> "In our view, the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a

---

9. *Dutton*, 400 U.S. at 86, 91 S.Ct. at 218, 27 L.Ed.2d at 225. (Footnote omitted).

10. The *Donnelly* rule limiting the hearsay exception for declarations against interest to statements against the interest of a pecuniary character was also the rule in West Virginia. *See also State v. Poe*, 69 W.Va. 260, 71 S.E. 177 (1911) (statements subjecting the declarant to criminal liability were held to be outside the exception). It was not until 1978 that this Court recognized the "penal interest" exception in *State v. Williams*, 162 W.Va. 348, 249 S.E.2d 752 (1978).

11. *See United States v. Katsougrakis*, 715 F.2d 769 (2nd Cir.1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984).

12. *Williamson* cautions courts to be suspicious of statements implicating others. Implicating others may be nothing other than self-serving, especially if the declarant has been arrested or if the declarant concedes only a minor role and blames another with the major responsibility. —— U.S. at ——, ——, 114 S.Ct. at 2437, 2439, 129 L.Ed.2d at 485, 488 (four justices declared that an arrested person has "strong incentive to shift blame or downplay his own role").

broader narrative that is generally self-inculpatory. The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else." —— U.S. at ——, 114 S.Ct. at 2435, 129 L.Ed.2d at 483.

Using the broad definition of "statement" articulated in Rule 801(a)(1)—"an oral or written assertion"—as a point of departure, *Williamson* went on to explain the significance of the term for purposes of Rule 804(b)(3). *Williamson*, —— U.S. at ——, 114 S.Ct. at 2434, 129 L.Ed.2d at 482. Specifically, the Supreme Court concluded that the word "statement" means " 'a single declaration or remark,' " rather than " 'a report or narrative,' " reasoning that this "narrower reading" is consistent with the principles underlying the rule. —— U.S. at ——, 114 S.Ct. at 2434–35, 129 L.Ed.2d at 482, *quoting Webster's Third New International Dictionary* 2229, defn. 2(a) and (b) (1961). Thus, when ruling upon the admission of a narrative under this rule, a trial court must break down the narrative and determine the separate admissibility of each " 'single declaration or remark.' " This exercise is a "fact-intensive inquiry" that requires "careful examination of all the circumstances surrounding the criminal activity involved[.]" —— U.S. at ——, 114 S.Ct. at 2437, 129 L.Ed.2d at 486.

■ We adopt the Supreme Court's approach to Rule 804(b)(3), while retaining a separate Confrontation Clause analysis.[13] Therefore, to satisfy the admissibility requirements under Rule 804(b)(3), a trial court must determine: (a) The existence of each separate statement in the narrative; (b) whether each statement was against the penal interest of the declarant; (c) whether corroborating circumstances exist indicating the trustworthiness of the statement[14]; and (d) whether the declarant is unavailable.

■ Significantly, because the trial court in *Williamson* failed to conduct the appropriate analysis, the Supreme Court remanded the case without reaching the issue of whether the Confrontation Clause was violated. Here, we have the same problem. The trial court failed to analyze the independent statements comprising the declarants' narratives.[15] Rather, it assessed the entire statements in their aggregate, ultimately concluding that they were admissible under Rule 804(b)(3). Given the context in which the statements were made, there is nothing in the record to demonstrate to us that the trial court conducted the fact-intensive inquiry required. It is important in this case to observe that at the time the declarants made

13. In adopting Rule 804(b)(3), Congress intentionally avoided constitutional evidentiary principles, such as those required under the Sixth Amendment Confrontation Clause, when it adopted the Federal Rules of Evidence. As stated in *United States v. Alvarez*, 584 F.2d 694, 700 (5th Cir.1978), *quoting* S.Rep. No. 93–1277, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 7051, 7068:

" '[T]he basic approach of the rules is to avoid codifying, or attempting to codify, constitutional evidentiary principles, such as the ... sixth amendment's right of confrontation. Codification of a constitutional principle is unnecessary and, where the principle is under development, often unwise.' "
Congress properly left open to the courts the question of the constitutional parameters for determining the admissibility of hearsay evidence.

14. "Rule 804(b)(3) requires that corroborating circumstances clearly indicate the trustworthiness of a statement against interest.... This applies to both inculpatory and exculpatory statements." *United States v. Garcia*, 897 F.2d 1413,

1420–21 (7th Cir.1990). (Citations omitted). *See Naum v. Halbritter, supra* (even when introduced by the State there must be sufficient corroboration of the facts contained in the statement).

15. The pertinent portion of the trial court's ruling states:

"There's been a finding that the statements that the State wishes to introduce are against penal interest of the declarants. That I think satisfies the rule. It is never beyond the supreme court to change the rules. Often times at the sake of circuit judges. It happens everyday and it may happen. My reading of the rules and even brief review of the judiciary notes as to the federal rules beyond it don't seem to have any firmly rooted expansion or should I say contraction of 804 B3 as you argue should take place. That's not to say that our supreme court might not find it, but I don't see the trend going that way. I think they're against penal interest and therefore—and the declarants are unavailable. They fit in there."

their statements they were not subject to any sort of cross-examination and their lawyers were not even present during the interrogation. Furthermore, the circumstances surrounding the making of each of the statements are not identical. Therefore, because we are unable to evaluate the assertions comprising the declarants' statements, remand is required.

If the trial court decides upon remand that the statements are admissible, it must then decide whether the statements satisfy the Confrontation Clause. To offer guidance, we direct the trial court to evaluate the statements as if we have decided that Rule 804(b)(3) is not a "firmly rooted exception."

The question left opened in *Williamson* with regard to the Confrontation Clause was resolved implicitly in West Virginia. In Syllabus Point 2, in part, of *State v. Mullens*, 179 W.Va. 567, 371 S.E.2d 64 (1988), this Court, relying on *Lee v. Illinois*, 476 U.S. at 543, 106 S.Ct. at 2063, 90 L.Ed.2d at 527, stated that "absent sufficient independent 'indicia of reliability' to rebut the presumption of unreliability" the introduction of a third-party confession against a defendant is a violation of the Confrontation Clause. We repeated this holding in *State v. Marcum*, 182 W.Va. 104, 386 S.E.2d 117 (1989).

■ To conform the language of our cases with the more recent holding of the United States Supreme Court in *Wright, supra*, we now hold that hearsay of the nature disputed here must be reliable by virtue of its *inherent* trustworthiness. Thus, absent " 'a showing of particularized guarantees of trustworthiness,' " [16] the admission of a third-party confession implicating a defendant violates the Confrontation Clause. The burden is squarely upon the prosecution to establish the challenged evidence is so trustworthy that adversarial testing would add little to its reliability. Furthermore, unless an affirmative reason arising from the circumstances in which the statement was made provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the Confrontation Clause requires exclusion of the out-of-court statement.

The defendant argues that because the requisite "particularized guarantees of trustworthiness" are lacking, the admission of the disputed statements violates the Confrontation Clause. The trial court concluded that no independent showing of reliability was necessary because it found the statements were admissible under Rule 804(b)(3), as a deeply rooted exception. Thus, the State made no effort to satisfy the requirements we outlined in *James Edward S., supra*. As we suggest above, if the trial court considers the statements admissible under Rule 804(b)(3) and *Williamson*, the trial court also must determine upon remand whether the statements are admissible under the Confrontation Clause. For that reason, we choose to elaborate on those requirements.

■ Even if the hearsay does not fit within an established exception, its admissibility is not barred by the Confrontation Clause if, considered apart from any corroborating evidence, there is "a showing of particularized guarantees of trustworthiness[.]" Consideration should be given to the totality of the circumstances "that surround the making of the statement and that render the declarant particularly worthy of belief"—so worthy of belief " 'that the test of cross-examination would be a work of supererogation.' " *Wright*, 497 U.S. at 819, 110 S.Ct. at 3149, 111 L.Ed.2d at 655, *quoting* 5 Wigmore, *Evidence* § 1420 at 251 (Chadbourn rev. 1974). The guarantees of trustworthiness "must be at least as reliable as evidence admitted under a firmly rooted hearsay exception[.]" 497 U.S. at 821, 110 S.Ct. at 3149, 111 L.Ed.2d at 656, *citing Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608. "[A]n affirmative reason, arising from the circumstances in which the statement was made," is necessary to rebut the presumption of unreliability and exclusion under the Confrontation Clause. 497 U.S. at 821, 110 S.Ct. at 3149–50, 111 L.Ed.2d at 656. We are not imposing a new rule. To the contrary, *Wright* applied established precedents in measuring the admissibility of statements given by a child.

16. *Wright*, 497 U.S. at 817, 110 S.Ct. at 3148, 111 L.Ed.2d at 653, *quoting Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608. (Footnote omitted).

The Supreme Court declined to list what would constitute the necessary guarantees, but, without approving the results reached in the cases it cited, it gave a list of factors that appropriately could be considered by a trial court: "[U]se of terminology unexpected of a child of similar age"; "spontaneity and consistent repetition"; "mental state of the declarant"; and "lack of motive to fabricate." 497 U.S. at 821–22, 110 S.Ct. at 3150, 111 L.Ed.2d at 656. (Citations omitted). In *Wright,* the trial court admitted the hearsay of a two-and-one-half-year-old child, finding that (1) she had no motive to lie, and (2) the statements made to her doctor about daddy touching her with his pee-pee were not "of the type 'that one would expect a child to fabricate.'" 497 U.S. at 826, 110 S.Ct. at 3152, 111 L.Ed.2d at 659, quoting the trial judge. The Supreme Court of Idaho found the presumptive unreliability of these statements to be unaffected by these findings and reversed the defendant's conviction. The United States Supreme Court agreed, holding that the circumstances found by the trial court offered "no special reason for supposing that the incriminating statements were particularly trustworthy." 497 U.S. at 826, 110 S.Ct. at 3152, 111 L.Ed.2d at 659.[17]

■ In the light of *Wright* and its specific examples of testimony that failed to rebut the presumption of unreliability, the trial court specifically must examine whether the circumstances existing at the time a declarant gives a statement make the statement particularly worthy of belief so that the test of cross-examination would have been a work of supererogation. As "no mechanical test prevails," *Swan v. Peterson,* 6 F.3d 1373, 1379 (9th Cir.1993), the character of the guarantees of trustworthiness in this case must be weighed.

■ On appeal, we are not to second-guess a trial court.[18] *See Swan,* 6 F.3d at 1378. In cases that are open to reasonable differences, if the trial court applies the correct legal criteria, this Court is unlikely to substitute our judgment for that of the trial court. It is not our task to retry the case, to determine the defendant's guilt or innocence, or even to decide if the disputed statements are true. However, on the ultimate determination of trustworthiness, we act *de novo. See Swan,* 6 F.3d at 1379. Our task under the Constitution is to determine if these presumptively unreliable statements were made under circumstances affirmatively establishing that they were so reliable that cross-examination of the declarants was "of marginal utility." *Wright,* 497 U.S. at 820, 110 S.Ct. at 3149, 111 L.Ed.2d at 655.

Although our constitutional guarantee to the right of confrontation cannot be considered as absolute, it is not made of "soft plastic." Nor should it be disregarded in the name of expediency. In most cases, only by cross-examination can the truth or falsity of a declarant's statement be determined. Thus, a trial court's assessment of whether a particular declarant is apt to lie is not enough; the trial court must not infringe upon a defendant's right to a fair trial in which the opportunity to cross-examination is preserved.

As to the constitutional issue, the trial court failed to develop the circumstances surrounding the statements. We, therefore, refuse to attempt the impossible, that is to decide whether "sufficient independent 'indicia of reliability' [exist] to rebut the presumption of unreliability" surrounding the admitted third-party statements. Syl. pt. 2, in part, *Mullens, supra.* To meet this standard, the trial court must consider the state-

**17.** One of the statements admitted by the trial court was the child's comment to her doctor that daddy "does it a lot more with my sister[.]" The United States Supreme Court stated, although "the spontaneity of the statement and the change in demeanor" suggested that the child was telling the truth, "it is possible" spontaneity may not be an accurate indicator of trustworthiness where there are indications of prior interrogation, prompting, or manipulation by adults. 497 U.S. at 826–27, 110 S.Ct. at 3152–53, 111 L.Ed.2d at 659–60. (Citation omitted).

**18.** It is "the trial judge [who] is in the best position to weigh competing interests in deciding whether or not to admit certain evidence," and "[a]bsent an abuse of discretion, the decision of the trial judge to admit or reject evidence will not be overturned by an appellate court." *United States v. Sun Myung Moon,* 718 F.2d 1210, 1232 (2nd Cir.1983) (citation omitted), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984).

ments apart from any corroborating evidence and decide whether there was "a showing of particularized guarantees of trustworthiness."

## III.

## CONCLUSION

Accordingly, this case is remanded to the Circuit Court of Berkeley County for a hearing to determine the admissibility of the disputed statements under the legal criteria stated in this opinion. First, the trial court must determine whether the statements are admissible under Rule 804(b)(3) and, particularly, under *Williamson*. If, and only if, the prerequisites of Rule 804(b)(3) and *Williamson* are met, the trial court must proceed to determine the admissibility of the statements under our Confrontation Clause analysis. The defendant is entitled to a new trial unless both provisions are satisfied.

Vacated and Remanded.

BROTHERTON and RECHT, JJ., did not participate.

MILLER, Retired J., and FOX, J., sitting by temporary assignment.