489 S.E.2d 289

**In the Interest of ANTHONY RAY Mc.**

**No. 23736.**

Supreme Court of Appeals of West Virginia.

Submitted April 29, 1997.

Decided June 19, 1997.

George Castelle, Public Defender, Stephen Warner, Timothy A. Bradford, Public Defender's Office, Charleston, for the Appellant.

William C. Forbes, Prosecuting Attorney, Mary Beth Kershner, Assistant Prosecuting Attorney, Charleston, for the State.

DAVIS, Justice:

This is an appeal arising under W.Va.Code § 49–5–10(j) (1996) of our juvenile statutes.[1] The appellant/juvenile, Anthony Ray Mc., appeals from an order of the Circuit Court of Kanawha County transferring him from the court's juvenile jurisdiction to its criminal jurisdiction in connection with a homicide.[2] The juvenile alleges the circuit court committed error by (1) admitting into evidence a written hearsay statement and (2) basing the transfer upon hearsay evidence.

## I.

### FACTUAL BACKGROUND

On February 6, 1996, the juvenile, then sixteen years old, was arrested and charged with committing an act of juvenile delinquency in the intentional killing of Ernest Shabdue. Following the filing of the State's motion to transfer the case to the court's criminal jurisdiction the circuit court held a hearing on the matter.[3] Subsequently, the circuit court transferred the juvenile to the court's criminal jurisdiction. The circuit court entered the order on April 30, 1996, finding probable cause to believe that the

1. W.Va.Code § 49–5–10(j) provides, in relevant part, that a "child shall have the right to directly appeal an order of transfer to the supreme court of appeals[.]"

2. It is the practice of this Court in cases involving juveniles to use the last initial, rather than the last name, of the juvenile. See State v. Sonja B., 183 W.Va. 380, 382 n. 1, 395 S.E.2d 803, 805 n. 1 (1990).

3. The hearing took three days: March 26, 27 and April 2, 1996.

juvenile committed the crime of murder in the first degree.

The juvenile initiated this appeal of the transfer order.[4] Two grounds are alleged by the juvenile to support his contention that the transfer order should be reversed. It is alleged that the circuit court committed error in (1) admitting into evidence a written hearsay statement and (2) basing the transfer upon hearsay evidence alone.

## II.

### STANDARD OF REVIEW

Our review of a juvenile transfer order focuses upon the findings of fact and conclusions of law upon which the court based its decision to make the transfer to its criminal jurisdiction.[5] See W.Va.Code § 49–5–10(e) (1996) and Syl. Pt. 2, State ex rel. E.D. v. Aldredge, 162 W.Va. 20, 245 S.E.2d 849 (1978) (requiring findings of fact and conclusions of law be incorporated in the transfer order). In syllabus point 1 of In Interest of H.J.D., 180 W.Va. 105, 375 S.E.2d 576 (1988) we held that:

Where the findings of fact and conclusions of law justifying an order transferring a juvenile proceeding to the criminal jurisdiction of the circuit court are clearly wrong or against the plain preponderance of the evidence, such findings of fact and conclusions of law must be reversed. W.Va.Code, 49–5–10(a) [1977] [now, 49–5–10(e) [1996]]. Syl. pt. 1, State v. Bannister, 162 W.Va. 447, 250 S.E.2d 53 (1978).

See State v. Hosea, 199 W.Va. 62, 68, 483 S.E.2d 62, 68 (1996). While findings of fact are subject to a clearly wrong standard, "'[w]here the issue on an appeal from the

4. The record indicates the juvenile is confined at the Kanawha Home for Children.

5. We noted in syllabus point 4 of In the Interest of Moss, 170 W.Va. 543, 295 S.E.2d 33 (1982), that "'W.Va.Code Sec. 49–5–10(d) [1996] requires that the circuit court make an independent determination of whether there is probable cause to believe that a juvenile has committed one of the crimes specified for transferring the proceeding to criminal jurisdiction.' Syllabus, In the Interest of Clark, 168 W.Va. 493, 285 S.E.2d 369 (1981)."

circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review.' Syllabus point 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syl. Pt. 1, *State v. Berrill,* 196 W.Va. 578, 474 S.E.2d 508 (1996).

## III.

### ASSIGNMENTS OF ERROR

The juvenile argues that it was error for the circuit court to admit into evidence a written statement by William Smith. The prosecutor called Mr. Smith to testify during the transfer hearing. Mr. Smith invoked the privilege against self-incrimination and refused to testify. The circuit court concluded Mr. Smith was unavailable to testify. The circuit court permitted Mr. Smith's written statement to be introduced over the objections of Anthony Ray Mc.'s defense counsel. The essence of Mr. Smith's statement alleged that the juvenile was one of two individuals who shot the victim.[6] The statement placed Mr. Smith at the crime scene.

Our analysis of the admission of the statement involves two issues: (1) the admission under Rule 804(b)(3) of the West Virginia Rules of Evidence, and (2) the admission under the Confrontation Clause of the Sixth Amendment of the United States Constitution and W.Va. Const. Art. III, § 14. *State v. Mason,* 194 W.Va. 221, 227, 460 S.E.2d 36, 42 (1995).

## III.

### RELATIONSHIP BETWEEN THE HEARSAY RULES AND THE CONSTITUTIONAL RIGHT OF CONFRONTATION

When one examines the relationship between the hearsay rules and the constitutional right of confrontation, the similarity of their underpinnings is evident. The hearsay

rule operates to preserve the ability of a party to confront the witnesses against him in open court. The Confrontation Clause does the same for an accused in a criminal case. While similar, this Court has carefully guarded their distinct functions. In *State v. James Edward S.,* 184 W.Va. 408, 400 S.E.2d 843 (1990), Justice Miller cautioned that merely because a hearsay exception allows the introduction of evidence, the Confrontation Clause question is not necessarily resolved. The court stated:

> Although we have recognized that hearsay rules and the Confrontation Clause are generally designed to protect similar values, we have also been careful not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements.... The Confrontation Clause, in other words, bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule. (Internal quotations and citations omitted.)

*James Edward S.,* 184 W.Va. at 414, 400 S.E.2d at 849.

In fact, as recently as 1995, Justice Cleckley pointed out in *Mason* that "the introduction of extrajudicial statements at trial as direct and substantive evidence is circumscribed by the Confrontation Clause which places independent restrictions upon the admission of such evidence." *Mason,* 194 W.Va. at 228, 460 S.E.2d at 43.

In *Mason,* this Court clearly articulated that two separate analysis are generally necessary to satisfy the admissibility requirement of out-of-court statements. One analysis is required under Rule 804(b)(3). A separate analysis is required under the Confrontation Clause. As such, we independently address each issue.

---

**6.** The record indicates that Mr. Smith voluntarily went to the police after the victim was killed and prior to the suspects being identified. Mr. Smith informed the police that he and three other individuals, one of whom was the juvenile, drove the victim to the murder site. Mr. Smith stated that the juvenile and a female companion shot the victim with a pistol and a shotgun. The motive appears to be confiscation of the victim's marijuana. Mr. Smith also lead the police to the location of the murder weapons used in the killing. Based upon this information the juvenile was apprehended. The record reveals that Mr. Smith was the only person present during the killing who was not charged with a crime.

## IV.

### THE HEARSAY RULES

#### A.

#### Admitting Statements Under Rule 804(b)(3)

The West Virginia Rules of Evidence recognize that some kinds of out-of-court statements are less subject to hearsay dangers, and except them from the general rule that hearsay is inadmissible. One such category contained in Rule 804(b)(3) covers statements that are against the declarant's penal interest. Pursuant to Rule 804(b)(3) an out of court statement of a witness, who has been declared unavailable by the court on the grounds of a privilege, may be admitted if it subjects the declarant to criminal liability. Specifically, Rule 804(b)(3) is a hearsay exception. Rule 804(b)(3) states:

(b) Hearsay Exceptions.—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(3) Statements against Interest.—A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless he or she believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

In *Mason* this Court squarely addressed the issue of admitting an out-of-court statement under the penal interest exception of Rule 804(b)(3). The defendant in *Mason* was convicted of first degree murder. During his trial the State introduced out-of-court statements by three accomplices to the murder under the penal interest exception of Rule 804(b)(3). All three accomplices were deemed unavailable to testify. Two of the accomplices were declared unavailable be-

cause they invoked the privilege against self-incrimination. The third accomplice was declared unavailable for medical reasons. The defendant asked this Court to reverse his conviction on the grounds that the statements by the accomplices were not admissible under Rule 804(b)(3).

The initial inquiry in *Mason* was to determine what Rule 804(b)(3) meant by the term *statement*. To answer this question we looked at the United States Supreme Court's decision in *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). The defendant in *Williamson* was convicted of federal drug trafficking offenses. One of the issues defendant Williamson presented to the Supreme Court involved an admission, at trial, of an out-of-court statement by an accomplice under Rule 804(b)(3) of the Federal Rules of Evidence.[7] The out-of-court statement was made by an accomplice who refused to testify after invoking his Fifth Amendment privilege against self-incrimination.

Writing for the United States Supreme Court, Justice O'Connor discussed the meaning of the term statement, within the context of the penal interest exception provided by federal Rule 804(b)(3). Justice O'Connor stated:

To decide whether [the accomplice's] confession is made admissible by Rule 804(b)(3), we must first determine what the Rule means by 'statement,' which Federal Rule of Evidence 801(a)(1) defines as 'an oral or written assertion.' One possible meaning, 'a report or narrative,' connotes an extended declaration. Under this reading, [the accomplice's] entire confession—even if it contains both self-inculpatory and non-self-inculpatory parts—would be admissible so long as in the aggregate the confession sufficiently inculpates him. Another meaning of 'statement,' 'a single declaration or remark,' would make Rule 804(b)(3) cover only those declarations or remarks within the confession that are individually self-inculpatory.

*Williamson*, 512 U.S. at 599, 114 S.Ct. at 2434–35 (citation omitted). The Supreme Court ultimately determined that it would

---

7. Federal Rule 804(b)(3) is identical to W.Va. R.E., Rule 804(b)(3).

adopt a narrow meaning for *statement, i.e.* "a single declaration or remark."

■ In *Mason,* this Court determined that we would "adopt the Supreme Court's approach to Rule 804(b)(3)" and attribute a narrow meaning to the term *statement. Mason,* 194 W.Va. at 230, 460 S.E.2d at 45. As we said in syllabus point 7 of *Mason:*

> When ruling upon the admission of a narrative under Rule 804(b)(3) of the West Virginia Rules of Evidence, a trial court must break down the narrative and determine the separate admissibility of each single declaration or remark. This exercise is a fact-intensive inquiry that requires careful examination of all the circumstances surrounding the criminal activity involved.[8]

In addition to adopting *Williamson*'s narrow meaning for *statement,* we formulated the following test for admissibility requirements under the Rule 804(b)(3) analysis in syllabus point 8 of *Mason:*

> To satisfy the admissibility requirements under Rule 804(b)(3) of the West Virginia Rules of Evidence, a trial court must determine: (a) The existence of each separate statement in the narrative; (b) whether each statement was against the penal interest of the declarant; (c) whether corroborating circumstances exist indicating the trustworthiness of the statement; and (d) whether the declarant is unavailable.

A review of the record in the instant case reveals that the circuit court performed no analysis pursuant to the elements set out in syllabus point 8 of *Mason.* We, therefore, reverse and remand this case for such determination. For the purpose of giving guidance to the circuit court on remand, and for trial courts generally, we elaborate on each of the elements set forth in syllabus point 8 of *Mason.*

### B.

### The *Mason* Inquiry

■ **1. Existence of separate statements.** The first step in the *Mason* analysis is straightforward. The trial court must isolate the individual statements of a declarant and remove from the calculus anything not determined to be a statement by the declarant. This initial step may be complicated depending upon the form in which a declarant's statement is offered. In the case *sub judice* the statement given by Mr. Smith consisted of nine pages of responses to questions asked by a law enforcement officer. This question-answer type statement typically will be problematic for a trial court in isolating each specific statement of a declarant.[9] In question-answer type statements very often a declarant will give a one or two word response. In essence, the declarant adopts the statement of the interviewing officer that is implicit in the question.[10] Therefore, the trial court should treat such adopted statements as individual statements of the declarant.

■ **2. Statement against penal interest.** Once a circuit court has isolated each

---

**8.** It is important to clearly understand the nature of the constricted definitional change made by *Williamson* and *Mason.* All extraneous remarks included in a declarant's statement were admitted into evidence prior to the *Williamson* and *Mason* opinions. Now, based upon the limiting definition of the term statement only self-inculpatory remarks are admissible. For example: "(1) *We had popcorn before going to the victim's house.* (2) *I shot the victim first.*" Under the former unrestricted meaning attached to *statement,* Rule 804(b)(3) would permit statements 1 and 2 into evidence. The change made by *Williamson* and *Mason* <u>precludes</u> statement 1 from being introduced into evidence, because it is not self-inculpatory. In essence, it is not relevant.

**9.** An example of another type of statement is a narrative written or endorsed by the declarant.

The narrative type statement poses less problems in isolating individual self-inculpatory remarks, because third party questions are not intermingled in the narrative.

**10.** For example: *"Did you break into the house?" "Yes."* In this example the statement of the declarant is a simple "yes". However, the statement embraces from the declarant an admission of certain conduct. Therefore, a trial court should look at the question and response as one statement by the declarant.

In contrast: *"Didn't you shoot John Doe?" "Yes, I shot John Doe."* In this example the question is not part of the declarant's statement. The response, *"I shot John Doe,"* is a full statement which must be viewed and treated independently from the question.

statement of the declarant, the Court must then review each statement for the purpose of excluding all statements not against the declarant's penal interests. In *Williamson,* Justice O'Connor commented upon the exclusion of statements by a declarant which are not against the declarant's penal interest as follows:

> [T]he fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability. We see no reason why collateral statements, even ones that are neutral as to interest should be treated any differently from other hearsay statements that are generally excluded.

*Williamson,* 512 U.S. at 600, 114 S.Ct. at 2435.

We agree with *Williamson.*[11] We adopt the rule that self-serving collateral statements,[12] even those statements couched in neutral terms,[13] are not admissible under Rule 804(b)(3).[14]

Several reasons guide our decision to prohibit admitting into evidence a declarant's self-serving collateral statements and neutral collateral statements under Rule 804(b)(3). First, it is inconsistent with our decision in *Mason* to adopt a narrow definition of *statement;* yet, allow the introduction of self-serving collateral statements and neutral collateral statements under Rule 804(b)(3). Only the broader definition of *statement* is consistent with admitting collateral statements of a declarant.[15] Second, "[n]othing in the text of Rule 804(b)(3) or the general theory of the hearsay Rules suggests that admissibility is determined by whether a statement is collateral to a self-inculpatory statement." *Williamson,* 512 U.S. at 600, 114 S.Ct. at 2435. Third, a collateral statement by an accomplice "which inculpates the accused is presumptively unreliable." *State v. Mullens,* 179 W.Va. 567, 572, 371 S.E.2d 64, 69 (1988). Therefore, a justifiable burden is placed on prosecutors to require the actual testimony of an accomplice as opposed to offering for admission into evidence collateral statements under Rule 804(b)(3). Finally, we do not believe, as argued by Justice Kennedy in his concurring opinion in *Williamson,* that excluding all collateral statements from admission under Rule 804(b)(3) "would 'eviscerate the against penal interest exception.'" *Williamson,* 512 U.S. at 616, 114 S.Ct. at 2443, (Kennedy, J. concurring), quoting Comment, *Federal Rule of Evidence 804(b)(3) and Inculpatory Statements Against Penal Interest,* 66 Cal. L.Rev. 1189, 1213 (1978).[16]

---

**11.** In *Mason* we did not address the issue of excluding self-serving and neutral collateral statements.

**12.** An example of a self-serving collateral statement would be: *"Jane Doe used the gun."* See generally Bernard S. Jefferson, "Declarations Against Interest: An Exception to the Hearsay Rule," 58 Harv. L.Rev. 1, 57–63 (1944).

**13.** An example of a neutral collateral statement would be: *"John Doe and I robbed Taco Bell."* Under the rule we adopt today, references in the statement to John Doe are redacted and excluded. Only the self-inculpatory remark *"I robbed Taco Bell"* should be considered for admission into evidence by the trial court. See Jefferson, "Declarations Against Interest," supra note 12.

**14.** Justice Kennedy wrote a concurring opinion in *Williamson,* in which he was joined by Chief Justice Rehnquist and Justice Thomas, wherein he argued that a declarant's collateral statements should be admitted under Rule 804(b)(3).

**15.** It would be illogical to allow self-serving and neutral collateral statements into evidence under the more restrictive definition of statement outlined in the *Williamson* and *Mason* cases.

**16.** Justice O'Connor gave the following example in *Williamson* to illustrate how the exclusion of collateral statements under Rule 804(b)(3) does not preclude the rule's use as a vehicle by prosecutors seeking to use an accomplice's statement:

> For instance, a declarant's squarely self-inculpatory confession—'yes, I killed X'—will likely be admissible under Rule 804(b)(3) against accomplices of his who are being tried under a co-conspirator liability theory. Likewise, by showing that the declarant knew something, a self-inculpatory statement can in some situations help the jury infer that his confederates knew it as well. And when seen with the other evidence, an accomplice's self-inculpatory statement can inculpate the defendant directly: 'I was robbing the bank on Friday morning,' coupled with someone's testimony that the declarant and the defendant drove off together Friday morning, is evidence that the defendant also participated in the robbery.

*Williamson,* 512 U.S. at 603, 114 S.Ct. at 2436. (Citation omitted.)

In the final analysis, by restricting statements to those that are self-inculpatory and excluding all other non-self-inculpatory statements, we are permitting Rule 804(b)(3) to fulfill its intended purpose. That purpose does not include permitting the rule to be twisted out of recognition. *See* Jefferson, "Declarations Against Interest," 58 Harv. L.Rev. at 60–62 ("[C]ourts are not justified in admitting self-serving statements merely because they accompany [against penal interest] statements, and a neutral collateral statement should fare no better. . . . [I]t would be more reasonable to confine the use of statements against interest in all cases to the proof of the fact which is against interest, since the reliability of other parts of the statement is conjectural.")

■ In this case, the circuit court's task is to redact and exclude from evidence all statements by Mr. Smith which are not against his penal interests. This includes redaction and exclusion of statements collateral to any self-inculpatory statements. For example, in looking at Mr. Smith's question-answer statement we find the following two self-serving collateral statements: (1) "Shannon shot him in the back." (2) "Tony was telling me he shot him in the head." Neither statement is against Mr. Smith's penal interest and each is therefore inadmissible under Rule 804(b)(3).

■ **3. Trustworthiness of each statement.** There are two concerns implicit in the inquiry of the trustworthiness of a declarant's self-inculpatory statement. First, there is the concern of inherent reliability of a self-inculpatory statement.[17] However, because we have adopted the *Williamson* rule which bars collateral statements under the penal interest exception of Rule 804(b)(3), the concern for the inherent reliability of a self-inculpatory statement is somewhat diminished.[18] The very fact that a statement is "genuinely self-inculpatory . . . is itself one of the 'particularized guarantees of trustworthiness.'" *Williamson*, 512 U.S. at 605, 114 S.Ct. at 2437, *quoting Lee v. Illinois*, 476 U.S. 530, 543–545, 106 S.Ct. 2056, 2063–2064, 90 L.Ed.2d 514 (1986).

The second inquiry of trustworthiness involves any inference which may be drawn from a self-inculpatory statement. As illustrated by Justice O'Connor's example at footnote 16 of this opinion, a declarant's self-inculpatory statement, coupled with other evidence, can cause a factfinder to infer that a defendant was involved in a crime. Such an inference can be detrimental to a defendant. Therefore, the trustworthiness element remains a necessary inquiry under *Mason*.

Turning to the case at hand, once the circuit court has applied the first two elements of the *Mason* test, the court should have before it a statement or series of statements which do nothing but implicate the declarant in criminal activity. The issue the circuit court must then address is whether such statements are trustworthy or reliable.[19]

---

Additionally, it was pointed out in *Williamson* that "an accomplice's statements may also be admissible under other provisions of Rules 801–804." *Id.*, 512 U.S. at 604 n. *, 114 S.Ct. at 2437 n. *.

17. We touched upon this issue in *Mason*, in the context of our discussion of the Confrontation Clause, wherein we said "that hearsay of the nature disputed here must be reliable by virtue of its *inherent* trustworthiness." *Mason*, 194 W.Va. at 231, 460 S.E.2d at 46. (Emphasis in original.)

18. A statement by an accomplice will typically indicate that a defendant committed a criminal act. For example: "I drove the car and Jane Doe fired shots from the car window." The statement "I drove the car" is self-inculpatory. The statement "Jane Doe fired shots from the car window," is a neutral collateral statement. Under our previous law it was crucial to determine the trustworthiness of the self-inculpatory statement, because our previous law permitted bootstrapping a neutral collateral statement which inculpated a third party. By adopting the *Williamson* analysis, any type of collateral statement under Rule 804(b)(3) is barred. Therefore, the concern with the inherent reliability of a self-inculpatory statement like "I drove the car," is diminished.

19. *See* David S. Davenport, "The Confrontation Clause and the Co–Conspirator Exception in Criminal Prosecutions: A Functional Analysis, 85 Harv. L.Rev. 1378, 1386 (1972) ("To the extent a conspirator feels safe, he may be motivated to misrepresent the affair to a listener he wishes to impress. . . . Believing that his best means of gain is to worsen the position of others vis-a-vis himself, he may inaccurately characterize both the crime and the defendant's role, if any, in it in the hope of eventually receiving immunity or a lesser sentence.") ".

In making this determination it is necessary for the court to examine the totality of the circumstances surrounding the making of the statements. Also, the court must consider other relevant and credible evidence proffered by the defendant that casts doubt on the trustworthiness of the statements.

■ **4. Unavailability of declarant.** The final element of the *Mason* test is determination by the circuit court as to the declarant's availability to testify. One recognized method by which a declarant is deemed unavailable under Rule 804(b)(3), is by invoking the privilege against self-incrimination contained in the Fifth Amendment of the United States Constitution and W.Va. Const. Art. III, § 5. The law is clear that "an ordinary witness may decline to answer only after making the requisite showing of the danger of self-incrimination." 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, § 5–2(C), at 479 (1994), citing *State v. Reedy*, 177 W.Va. 406, 352 S.E.2d 158 (1986). "The witness is not exonerated from answering merely because he declares that in doing so he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified[.]" *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). The witness must have "reasonable cause to apprehend [such] danger from a direct answer" to questions posed to him or her. *Id.* Thus, "[t]he only way the Fifth Amendment can be asserted as to testimony is on a question-by-question basis." *United States v. Bodwell*, 66 F.3d 1000, 1001 (9th Cir.1995). This requires the witness to "take the stand, be sworn to testify, and assert the privilege in response to each allegedly incriminating question as it is asked." *Roach v. National Transportation Safety Bd.*, 804 F.2d 1147, 1151 (10th Cir.1986) (citation omitted), cert. denied, 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 195 (1988). *See United States v. Argomaniz*, 925 F.2d 1349, 1355 (11th Cir.1991) (" 'A court must make a particularized inquiry, deciding, in connection with each specific area that the questioning party wishes to explore, whether or not the privilege is well-founded.' "), *quoting United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir.1976). Only after an invocation of the privilege with respect to each specific question can this Court determine whether a responsive answer may lead to injurious disclosures.

We have not previously established a bright line test regarding invocation of the privilege against self-incrimination. However, as guidance, we note that Professor Cleckley suggests the following test for determining whether the privilege against self-incrimination is properly invoked with respect to particular questions posed:

> In making the determination as to what is incriminating, a court asks essentially two things. The first is whether the information is incriminating in nature. This may appear in either of two ways. It may be evident on its face, in light of the questions asked and the circumstances of its asking. If it is so facially evident, that ends this inquiry. If it is not, the person asserting the privilege may yet demonstrate its incriminating potential by further proof. If the incriminating nature of the information is established by either route, there remains the question whether criminal prosecution is sufficiently a possibility, all things considered, to trigger the need for constitutional protection. As to this, the proper test simply assesses the objective reasonableness of the [witness'] claimed apprehension of prosecution.

Cleckley, *Handbook on Evidence*, § 5–2(D)(1)(d), at 508–509 (citation omitted).

■ For the circuit court to reach the issue of Mr. Smith's unavailability to testify, the circuit court must satisfy the first three elements of syllabus point 8 of *Mason*. That is, there must be a determination that there was at least one self-inculpatory statement made by Mr. Smith which the court will admit into evidence.[20] For the purpose of

---

**20.** We have already determined that the circuit court failed to perform the necessary analysis. Mr. Smith took the stand and stated that he would not testify based upon the privilege against self-incrimination. The circuit court made no inquiry whatsoever to support its determination that Mr. Smith was entitled to invoke a blanket privilege against testifying and thus un-

providing guidance to the circuit court on remand and for courts in general, we set out the following bright line test that must be followed when a declarant seeks to invoke the privilege against self-incrimination in order to admit into evidence self-inculpatory statements under the penal interest exception of Rule 804(b)(3).

When circuit courts are confronted with a Rule 804(b)(3) against penal interest unavailability issue, involving a declarant seeking to invoke the privilege against self-incrimination, they should follow a three step procedure in determining whether and to what extent the privilege may be invoked:[21] (a) determine whether questions are facially self-incriminating, (b) determine whether the witness proved non-facially self-incriminating questions were in fact self-incriminating, and (c) determine whether the witness established unavailability.

■■■■■ To determine whether questions are facially self-incriminating, the following must occur: (a) the court must have previously determined the existence of self-inculpatory statements by the witness, (b) the party seeking to question the witness must be allowed to pose relevant individual questions to the witness, (c) before the witness responds in any way to each question, the court must *sua sponte* make a determination as to whether each question is facially self-incriminating, and (d) if a question is facially self-incriminating the witness may not be compelled to answer the question absent a grant of immunity from prosecution by the court.[22]

■■■ To determine whether the witness proved non-facially self-incriminating questions were in fact self-incriminating, the following must occur: (a) if the court determines that a particular relevant question is not facially self-incriminating, the witness or counsel for the witness must be permitted a reasonable opportunity to attempt to show the manner in which the question, if answered, is self-incriminating, (b) if the witness or counsel for the witness establishes by satisfactory proof that answering a non-facially self-incriminating question leads to self-incrimination, then the court cannot compel an answer, absent a grant of immunity from prosecution by the court, (c) if the witness fails to prove by satisfactory proof that answering a non-facially self-incriminating question would in fact be self-incriminating, the witness must answer the question.[23]

■■■ To determine whether the witness established unavailability, the court must make an independent determination of whether, as a result of the questioning, the witness established his or her unavailability for the purpose of admitting the previously determined self-inculpatory statements.

## V.

## SATISFYING THE CONFRONTATION CLAUSE

In syllabus point 2 of *Matter of Stephfon W.*, 191 W.Va. 20, 442 S.E.2d 717 (1994) we held that at a transfer hearing a juvenile has a due process "right to confront and cross-examine adverse witnesses[.]" *See* Syl. Pt. 3, *State v. Gary F.*, 189 W.Va. 523, 432 S.E.2d 793 (1993) ("A juvenile is denied his constitu-

---

available within the meaning of Rule 804(b)(3). Defense counsel specifically requested that the court permit questioning that went to Mr. Smith's credibility. The trial court refused to permit such an examination. Such refusal was reversible error. "A witness may be cross-examined regarding bias, prejudice or expected favor or any other fact which might affect his credibility." Syllabus Point 5, *State v. Jones,* 161 W.Va. 55, 239 S.E.2d 763 (1977), overruled on other grounds, *State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980).

21. We hasten to point out that this procedure is to be followed out of the presence of a jury, if the matter comes up during a trial.

22. If the witness refuses to answer a facially self-incriminating question after being granted immunity, then the court should either hold the witness in contempt and/or deem the witness available and exclude from evidence the previously determined self-inculpatory statements.

23. Should the witness refuse to answer a question in this instance, the court should hold the witness in contempt and/or deem the witness available and exclude from evidence the previously determined self-inculpatory statements.

tional right to confront his accusers when a critical witness, who has not been demonstrated as unavailable pursuant to the rules of evidence, is permitted to testify by telephone during a transfer hearing."). We stated in *Mason* that merely satisfying Rule 804(b)(3) is insufficient in the face of the Confrontation Clause. "[I]f the trial court considers the statements admissible under Rule 804(b)(3) ... the trial court also must determine ... whether the statements are admissible under the Confrontation Clause." *Mason*, 194 W.Va. at 231, 460 S.E.2d at 46. In addressing the issue of the Confrontation Clause we said in syllabus point 9 of *Mason*, in part, that:

> The burden is squarely upon the prosecution to establish the challenged evidence is so trustworthy that adversarial testing would add little to its reliability. Furthermore, unless an affirmative reason arising from the circumstances in which the statement was made provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the Confrontation Clause requires exclusion of the out-of-court statement.

*See* Syl. Pt. 5, *James Edward S.* ("Even though the unavailability requirement has been met, the Confrontation Clause contained in the Sixth Amendment to the United States Constitution mandates the exclusion of evidence that does not bear adequate indicia of reliability. Reliability can usually be inferred where the evidence falls within a firmly rooted hearsay exception."); [24] Syl. Pt. 7, *Matter of Stephfon W.* ("'At a transfer hearing, the court must determine the validity of a confession before allowing it to be used against the accused.' Syllabus Point 6, *In the Interest of Moss*, 170 W.Va. 543, 295 S.E.2d 33 (1982).' Syllabus Point 4, *Matter*

of *Mark E.P.*, 175 W.Va. 83, 331 S.E.2d 813 (1985).").

The United States Supreme Court's *Williamson* analysis somewhat diminishes the necessity of an independent Confrontation Clause inquiry, within the narrow context of admitting a self-inculpatory statement under Rule 804(b)(3).[25] This is necessarily so, because under the standards we have set out today the concern of trustworthiness has been diluted because all collateral statements are excluded under the penal interest exception of Rule 804(b)(3). Additionally, the stringent bright line test which must be followed permits the declarant to be vigorously confronted with relevant questions before a declarant is deemed unavailable as the result of asserting the privilege against self-incrimination.

■ We anticipate several situations where an independent Confrontation inquiry is necessary, when the issue of admitting a self-inculpatory statement under the penal interest exception of Rule 804(b)(3) is based solely upon declarant's unavailability by asserting the privilege against self-incrimination. Those situations are: (1) a declarant refused outright to answer questions that a court has determined are non-facially self-incriminating, or (2) a declarant refused to answer non-facially self-incriminating questions after failing to prove to the court that the questions are self-incriminating, or (3) a declarant refused to answer facially self-incriminating questions after being granted immunity from prosecution, or (4) a declarant refused to answer non-facially self-incriminating questions that were proven to be self-incriminating, but the declarant was granted

24. In *Mason* we remanded the case with instructions that the trial court "evaluate the statement as if we have decided that Rule 804(b)(3) is not a 'firmly rooted [hearsay] exception.'" *Mason*, 194 W.Va. at 231, 460 S.E.2d at 46. We make clear today that the question of whether Rule 804(b)(3) is a firmly rooted hearsay exception is irrelevant for state constitutional purposes. An independent Confrontation inquiry under Rule 804(b)(3) is required as outlined in this opinion.

25. *Williamson* in fact stopped short of making a determination as to whether an independent

Sixth Amendment Confrontation Clause analysis would be required. In dicta the Supreme Court noted "that the very fact that a statement is genuinely self-inculpatory—which our reading of Rule 804(b)(3) requires— ... makes a statement admissible under the Confrontation Clause." *Williamson*, 512 U.S. at 605, 114 S.Ct. at 2437 (citation omitted). Under the Confrontation Clause of W.Va. Const. Art. III, § 14, an independent analysis is required as outlined in this opinion.

immunity to answer them.[26] In such instances, an independent Confrontation inquiry is necessary and must be reflected in the record as having occurred. Moreover, whenever unavailability under the penal interest exception of Rule 804(b)(3) is based upon any factor other than the privilege against self-incrimination, an independent Confrontation inquiry must ensue and be reflected in the record.[27]

 In syllabus point 2 of *James Edward S.* we held as follows:

> The two central requirements for admission of extrajudicial testimony under the Confrontation Clause contained in the Sixth Amendment to the United States Constitution are: (1) demonstrating the unavailability of the witness to testify; and (2) proving the reliability of the witness's out-of-court statement.

*James Edward S.* sets out a straightforward general two-pronged test for making a Confrontation inquiry: (1) unavailability and (2) reliability. To the extent that an independent Confrontation inquiry is made necessary upon remand of this case, and for courts generally, we provide the following guidelines for making such an inquiry.

## A.

### Confrontation Analysis

 **1. Unavailability.** The constitutional question of unavailability is generally answered when a court determines, under the penal interest exception of Rule 804(b)(3), that a declarant has successfully invoked the privilege against self-incrimination. In this situation no independent Confrontation inquiry into unavailability is required.

However, as was previously identified in this opinion, certain situations require an independent Confrontation analysis. For example, if a declarant is determined to be unavailable under the penal interest exception of Rule 804(b)(3) merely because he or she refused to answer answerable questions,[28] the Confrontation inquiry into unavailability is necessary. In this situation alone, in order for a declarant to be deemed constitutionally unavailable, the prosecutor must affirmatively show that the declarant was granted immunity from prosecution by the court. If the prosecutor fails to establish a grant of immunity was made, the declarant is available within the meaning of the Confrontation Clause.[29]

 Additionally, if unavailability under Rule 804(b)(3) is determined for any other reason an independent Confrontation inquiry of unavailability is necessary. The test for satisfying the Confrontation inquiry in such other instances requires the State prove "that it has made a good-faith effort to obtain the witness's attendance at trial. This showing necessarily requires substantial diligence." Syl. Pt. 3, *James Edward S.* Moreover, "[w]here there is a lack of evidence in the record demonstrating the State's good-faith efforts to secure the witness for trial, the prosecution has failed to carry its burden of proving unavailability." Syl. Pt. 4, *James*

---

**26.** There is an assumption here that the court has not exercised its discretion to exclude previously determined self-inculpatory statements as a sanction for conduct in situation (1), (2), (3) or (4). Where such an exclusion occurs, no Confrontation inquiry is necessary.

**27.** Other ways in which a declarant is typically found to be unavailable include (1) inability to locate the declarant and (2) illness.

**28.** By "answerable questions" we mean: (1) a declarant refused outright to answer questions that a court has determined are non-facially self-incriminating, or (2) a declarant refused to answer non-facially self-incriminating questions after failing to prove to the court that the questions are self-incriminating, or (3) a declarant refused to answer facially self-incriminating questions af-

ter being granted immunity from prosecution, or (4) a declarant refused to answer non-facially self-incriminating questions that were proven to be self-incriminating, but the declarant was granted immunity to answer them.

We realize that a prosecutor will be reluctant to ask the court to grant immunity to a declarant who refuses to answer non-facially self-incriminating questions that were not proven to be self-incriminating, or refuses outright to answer non-facially self-incriminating questions. However, this is a burden the prosecutor must carry on behalf of its declarant.

**29.** Of course, the actual granting of immunity is by the court. See W.Va.Code § 57–5–2 (1997).

*Edward S.*[30] If such a failure occurs a declarant's self-inculpatory statements must be excluded from evidence.

■ **2. Reliability.** As an initial observation, the Confrontation reliability inquiry is unnecessary if the court determines that the State failed its burden under the Confrontation inquiry regarding unavailability. Additionally, the constitutional reliability issue is generally resolved when the court determines, under the penal interest exception of Rule 804(b)(3), that a declarant successfully invoked the privilege against self-incrimination. In such a situation no independent Confrontation inquiry into reliability is required, because the reliability analysis was resolved in the "trustworthiness" element set out in the third element of syllabus point 8 of *Mason.* Even though the prosecutor satisfies *Mason*'s "trustworthiness" element, if the declarant ultimately is determined to be unavailable under the penal interest exception of Rule 804(b)(3) because he or she refused to answer answerable questions,[31] then an independent Confrontation inquiry into reliability is also necessary.[32] Additionally, whenever unavailability under the penal interest exception of Rule 804(b)(3) is based upon any factor other than the successful invocation of the privilege against self-incrimination an independent Confrontation inquiry into reliability must occur.

■ We pointed out in *Mason* that " 'no mechanical test prevails' " for making a reliability determination. *Mason,* 194 W.Va. at 232, 460 S.E.2d at 47, *quoting Swan v. Peterson,* 6 F.3d 1373, 1379 (9th Cir.1993). We went on to set out a guideline for making a Confrontation reliability inquiry in syllabus point 9 of *Mason,* in part, as follows:

The burden is squarely upon the prosecution to establish the challenged evidence is so trustworthy that adversarial testing would add little to its reliability. Furthermore, unless an affirmative reason arising from the circumstances in which the statement was made provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the Confrontation Clause requires exclusion of the out-of-court statement.

We also noted in *Mason* that "the trial court specifically must examine whether the circumstances existing at the time a declarant gives a statement make the statement particularly worthy of belief so that the test of cross-examination would" not impugn its reliability. *Mason,* 194 W.Va. at 232, 460 S.E.2d at 47. In the final analysis, the prosecutor has a heavy burden of persuading the court of particularized guarantees of reliability in a declarant's self-inculpatory statements.[33] Where the burden is not met, the Confrontation Clause bars admission of such statements.

## IV.

## CONCLUSION

In view of the foregoing, we reverse the order transferring the juvenile to the criminal jurisdiction of the court and remand this case for a determination consistent with this opinion.

Reversed and Remanded.

---

30. This test, of course, was developed in *James Edward S.* for application where evidence was offered under the residual hearsay exceptions contained in Rule 803(24) and Rule 804(b)(5). Nevertheless, because we have determined that the question of whether Rule 804(b)(3) is a firmly rooted hearsay exception is irrelevant, see note 24, the test is appropriate and applicable here.

31. *See* note 28 *supra.*

32. For the sole purpose of clarification, it is possible for the State to prove trustworthiness during the *Mason* inquiry, even though a declar-

ant refused to answer answerable questions. Without commenting on the weight to be given the prosecutor's evidence in the instant case, we will note the prosecutor presented evidence through a police officer regarding weapons, a shotgun shell and descriptions of persons; all of which pointed to the issue of trustworthiness.

33. In that we have determined that this case must be remanded on the issue of adequate findings pertaining to the admissibility of Mr. Smith's statement, we need not decide the juvenile's second assignment of error.