542 S.E.2d 399

STATE of West Virginia Plaintiff below, Appellee,

v.

James Allen BAYLOR, Defendant below, Appellant.

No. 27771.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 31, 2000.

Decided Dec. 1, 2000.

Melvin C. Snyder, III, Esq., Preston County Prosecuting Attorney, Kingwood, for Appellee.

James B. Zimarowski, Esq., Morgantown, for Appellant.

PER CURIAM.

## I.

In the instant case, James Allen Baylor appeals his conviction of malicious assault, a violation of *W.Va.Code*, 61–2–9 [1978]. A jury convicted Mr. Baylor of this offense based on evidence that Mr. Baylor had kicked Jason Trickett in the face and head.

The kicking occurred at the house of a neighbor of Mr. Baylor. Mr. Trickett and a friend had sneaked into Mr. Baylor's neighbor's house for a secret, early-morning rendezvous with the neighbor's daughter and her girlfriend. After the neighbor caught the "night visitors," Mr. Baylor and others came to the scene. A series of events then occurred—events about which there was conflicting testimony. These events left Mr. Trickett badly injured.

As a result of these events, the state filed a raft of criminal charges (including kidnaping) against Mr. Baylor, his neighbor, and others. All of these charges—except the one charge of malicious assault against Mr. Baylor—were either dropped, dismissed by the trial court, or found by a jury to be not proven.

Mr. Baylor argues that his conviction should be overturned and that he should be awarded a new trial because the trial court admitted into evidence, over Mr. Baylor's timely objection, two pages of medical records arising from the post-incident hospital treatment of Mr. Trickett.

Specifically, the medical records contained a written statement by an emergency room physician to the effect that Mr. Trickett had suffered a broken nose. The physician who made the statement was not available at Mr. Baylor's trial to be cross-examined, although he had been listed as a State's witness and the State had tried to subpoena him. Mr. Baylor's counsel contends (and the State does not dispute this) that he, counsel, had been surprised by the physician's non-appearance as a witness, and that counsel could not himself obtain the in-person trial testimony of the physician.

Mr. Baylor objected to the admission of these medical records as (1) containing inadmissible hearsay, under the *West Virginia Rules of Evidence;* and (2) as evidence that violated Mr. Baylor's constitutional right to confront the witnesses against him.

The circuit court apparently allowed the medical records to come into evidence and to go to the jury on the grounds that the records met the "business records" exception to the hearsay rule—*West Virginia Rules of Evidence,* Rule 803(6)—that states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances

of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

## II.

The State argues that the medical records in question fit into the language of the foregoing-quoted "business records" exception to the evidentiary rule against hearsay—and that therefore the physician's statement in the records was not inadmissible hearsay.

However, the existence of a hearsay exception—and we do not intimate in any way by our discussion that we find that the physician statement did fit within this exception—does not end the admissibility inquiry in a criminal case. The admissibility of the records is also governed by the *constitutional* protection that is explicitly provided by Article III, Section 14 of the *West Virginia Constitution:* "In all such trials, the accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted with the witness against him . . ."—also known as the "Confrontation Clause."

As we recently stated in *In Interest of Anthony Ray Mc.,* 200 W.Va. 312, 318 489 S.E.2d 289, 295 (1997) (emphasis added):

> When one examines the relationship between the hearsay rules and the constitutional right of confrontation, the similarity of their underpinnings is evident. The hearsay rule operates to preserve the ability of a party to confront the witnesses against him in open court. The Confrontation Clause does the same for an accused in a criminal case. *While similar, this Court has carefully guarded their distinct functions.* In *State v. James Edward S.,* 184 W.Va. 408, 400 S.E.2d 843 (1990), Justice Miller cautioned that *merely because a hearsay exception allows the introduction of evidence, the Confrontation Clause question is not necessarily resolved.* The court stated:
>
> > Although we have recognized that hearsay rules and the Confrontation Clause are generally designed to protect

similar values, *we have also been careful not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements* .... The Confrontation Clause, in other words, bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule. (Internal quotations and citations omitted.)

*James Edward S.,* 184 W.Va. at 414, 400 S.E.2d at 849.

■ We also stated, in Syllabus Point 13 of *In Interest of Anthony Ray Mc., supra:*

"The burden [in a Confrontation Clause analysis] is squarely upon the prosecution to establish the challenged evidence is so trustworthy that adversarial testing would add little to its reliability. Furthermore, unless an affirmative reason arising from the circumstances in which the statement was made provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the Confrontation Clause requires exclusion of the out-of-court statement."

(Citation omitted.)

■ The State further argues that we need not address the hearsay exception and Confrontation Clause issues. The State contends that even assuming *arguendo* that the physician's statement was inadmissible hearsay or violative of Mr. Baylor's Confrontation Clause rights, the effect on Mr. Baylor's conviction of the statement was negligible.

In response to this argument, Mr. Baylor contends that a key issue in the trial was whether Mr. Baylor's alleged attack on Mr. Trickett was "malicious." Mr. Baylor argues that the statement that Mr. Trickett had suffered a broken nose could have weighed heavily in the jury's deliberations on this issue—and that Mr. Baylor's counsel's inability to cross-examine the doctor on the statement might have made a difference at trial.

However, upon a full review of the trial record, Mr. Baylor's argument on this point is not persuasive.

At trial, Mr. Baylor denied that he had attacked or injured Mr. Trickett at all. Mr. Baylor suggested that Mr. Trickett might have been injured during a scuffle with other people at the scene. The jury—as was their right—disbelieved Mr. Baylor's version of events. They found, on the basis of eyewitness testimony, that Mr. Baylor had attacked Mr. Trickett and had caused his injuries.

Additionally, there was significant evidence—far more probative than the brief physician's statement in the medical records—tending to show the actual severity of Mr. Trickett's injuries. Color photographs were taken of Mr. Trickett after the incident, showing substantial bruising, swelling, and disfigurement of Mr. Trickett's face. Several witnesses testified that blood covered Mr. Trickett's face and head after he was attacked—and also testified about the suffering that Mr. Trickett experienced as a result of his injuries.

When compared to the other evidence at trial that tended to prove the severity of Mr. Trickett's injuries—evidence that inferentially tended to prove Mr. Baylor's "malice" in causing the injuries, *see State v. Scotchel,* 168 W.Va. 545, 554–55, 285 S.E.2d 384, 390 (1981)—the physician's brief statement in the medical records, noting that Mr. Trickett had a broken nose, was at the most a minor "blip" on the jury's evidentiary radar screen.

If our review of the record suggested that the physician's statement in the medical records in question had arguably made a material contribution to Mr. Baylor's conviction of malicious assault, we would need to conduct a more detailed analysis of the trial court's ruling on the records' admissibility. *See, e.g., Naum v. Halbritter,* 172 W.Va. 610, 309 S.E.2d 109 (1983) (out-of-court statements by deceased prostitute that she had sexual relations with prosecuting attorney were not admissible in prosecution of prosecutor for false swearing, because of Confrontation Clause).

However, despite the well-presented arguments of Mr. Baylor's counsel to the contrary, there is simply no reason to believe that the physician's statement in the medical records constituted anything but *de minimis* surplusage in the State's case against Mr. Baylor. No further analysis is therefore necessary. It is clear to us that the circuit court

did not commit reversible error in admitting the medical records in question.

## III.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.